SO ORDERED.

SIGNED this 3rd day of May, 2019.



_____
Robert E. Nugent
United States Bankruptcy Judge

DESIGNATED FOR ONLINE PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE:<br><br>RONNIE LEE WAGNER<br>TAMMY LOUISE WAGNER<br><br>        Debtors. | Case No. 18-11084<br>Chapter 7 |
| RONNIE LEE WAGNER and<br>TAMMY LOUISE WAGNER<br><br>        Plaintiffs,<br><br>vs.<br><br>UNION STATE BANK,<br><br>        Defendant. | Adv. No. 18-5106 |

**ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

1

Filing a voluntary bankruptcy petition stays any collection of a pre-petition debt until the bankruptcy court lifts the automatic stay, dismisses or closes the case, or grants or denies a discharge.[1] The stay effectively enjoins certain activities against the debtor, including the continuation of a pre-petition action and the assessment of a claim against the debtor. When the Wagners filed their Chapter 13 case and asked to extend the stay, they specifically waived it as to the foreclosure of a mortgage and sale of their residence. Not content to journalize its pre-petition foreclosure petition by taking an *in rem* judgment against the debtors, the Union State Bank (over the debtors' strenuous objections) convinced the state court to enter a money judgment against the debtors personally, but only to be enforced if their Chapter 13 case was dismissed. Because seeking and obtaining an *in personam* remedy against the debtors was stayed by 11 U.S.C. § 362(a)(1) and (a)(6), and was not authorized by any order entered by this Court, the Bank violated the stay and is liable for damages as § 362(k)(1) provides.[2]

Uncontroverted Facts

There are no disputed material facts. Defendant Union State Bank is a secured creditor holding a first mortgage lien on property located along U.S. Highway 166 in Arkansas City, Kansas ("Hwy 166 Property") that plaintiffs occupied as their residence. In 2017, the Bank commenced a foreclosure action in the Cowley County District Court. That foreclosure was temporarily halted on

---

[1] 11 U.S.C. § 362(c)(2).
[2] The plaintiffs-debtors appear by their attorney Martin J. Peck, Wellington, Kansas. The Union State Bank appears by its counsel Lee E. Velasquez and Orvel Mason, Arkansas City, Kansas.

**2**

November 13, 2017 by plaintiffs' first Chapter 13 bankruptcy filing.[3] Confirmation of the Wagners' Chapter 13 plan was denied, and their case was dismissed on May 31, 2018 for failure to provide tax returns.

Plaintiffs filed the current Chapter 13 bankruptcy on June 6, 2018, again staying the Bank's foreclosure action. As in their first case, plaintiffs' Chapter 13 plan filed on June 7 indicated that they were surrendering the Hwy 166 Property.[4] Because of the dismissal of the first Chapter 13 case, the Wagners also filed a motion to extend the automatic stay under § 362(c)(3).[5] They carved out of that extension *in rem* relief as to the Hwy 166 Property. The Bank objected to the stay extension and filed a motion for stay relief.[6] At the June 27 hearing on the stay extension, the Bank withdrew its objection and the court granted the extension.[7] The July 17 Order granting the motion provided:

> . . . the automatic stay is extended with respect to all creditors and all claims, **except** that the debtors do not seek to extend the automatic stay with respect to the claim of Union State Bank on their residence on U.S. 166, . . . and the **automatic stay is modified** to permit the Bank to obtain *in rem* relief against that property and effect foreclosure of the Bank's lien.[8]

Bank counsel approved the July 17 Order.

The Bank's motion for relief from the stay on the Hwy 166 Property was heard on July 18. The Bank sought stay relief to "enter a formal journal entry of

---

[3] *In re Wagner,* Case No. 17-12226 (Bankr. D. Kan.). Under their proposed Chapter 13 plan in that case, the Wagners proposed to surrender the Hwy 166 Property. Doc. 25.
[4] Doc. 6, p. 3, § 9.
[5] Doc. 17. *See* 11 U.S.C. § 362(c)(3).
[6] Doc. 22.
[7] Doc. 31. The Bank withdrew its objection to the motion after Ms. Wagner testified.
[8] Doc. 42.

3

judgment" in the foreclosure case and complete the foreclosure process, including sale of the Hwy 166 Property and application of sale proceeds to the Wagners' debt.[9] The motion stated that the "judgment against the [Chapter 13] Trustee shall be *in rem* only."[10] Similar qualifying language was not included regarding the judgment to be entered against the Wagners. At the hearing on July 18, the parties advised the Court that they agreed the stay had already been lifted as to the Hwy 166 Property.[11] The Bank submitted a partial Order for stay relief on the Hwy 166 Property that mimicked the language in its motion. That Order was submitted under D. Kan. LBR 9074.1 and was entered July 31, 2018 without the debtors objecting.[12]

After entry of the July 17 Order and the partial stay relief order, the parties continued to argue about the terms of the journal entry to be entered in the state court foreclosure action. They exchanged several e-mails and engaged in colloquy with this Court over a proposed state court journal entry at an August 8 hearing.[13] Initially, the Wagners' counsel signed the proposed journal entry after modifying page 7 to make clear that the Bank was granted judgment *in rem* against the Wagners and included a sentence that stated: "Nothing herein shall be construed as

---

[9] Doc. 22 at p. 5.
[10] *Id.* at ¶ 6.a. This language is superfluous because, in a Chapter 13, the debtor, not the trustee, retains possession and use of the debtor's property, *see* §§ 1306(b) and 1303.
[11] Doc. 43, 44. Indeed, the stay expired as to the Hwy 166 Property after 30 days from the petition date under § 362(c)(3)(A) because the debtors did not request it be extended, making this motion redundant.
[12] Doc. 50.
[13] That hearing transcript is not part of the summary judgment record.

4

granting in personam judgment against Ronnie L. Wagner or Tammy L. Wagner."[14] That proposed journal entry was not submitted to the state court by the Bank. Instead the Bank demanded that it be granted an *in personam* judgment against the Wagners with the proviso that it not be enforceable unless their Chapter 13 case was dismissed before discharge. It proposed the following language in the journal entry:

> During the pendency of Case No. 18-11084 [the bankruptcy case] . . . this paragraph shall be construed as granting judgment enforceable only against the real estate described herein, but upon dismissal of Case No. 18-11084 or its termination other than by completion of a confirmed plan and a Chapter 13 discharge, the judgment shall be enforceable against Defendants Ronnie L. Wagner and Tammy L. Wagner as provided by law. In the event of a deficiency, the proof of claim filed by the . . . Bank in Case No. 18-11084 may be amended to claim the deficiency as an unsecured debt to be provided for in the Chapter 13 plan.[15]

The Wagners objected to that language, arguing that it violated the stay by "continuing…a proceeding against the debtor…."[16] That proposed journal entry was not submitted to the state court. Counsel continued e-mail communications back-and-forth through August trying to resolve their dispute over the state court foreclosure journal entry to no avail.

At the Wagners' plan confirmation hearing on September 12, 2018, their counsel announced that "the Bank has got set up for tomorrow to take *in rem* relief on the residence." Bank counsel acknowledged that announcement was correct.

---

[14] Ex. A, Adv. Doc. 13-1.
[15] Ex. B, Adv. Doc. 13-2.
[16] 11 U.S.C. § 362(a)(1)

5

On September 14, the Bank submitted a foreclosure journal entry to the state court under KAN. S. CT. Rule 170 (without Mr. Peck's approval).[17] That journal entry provided:

> 21. The Order for Relief from Automatic Stay (Partial) authorizes plaintiff and this court to complete these state court foreclosure proceedings as to the first cause of action [the Hwy 166 Property]. *The Court concludes judgment should be entered against defendants Ronnie L. Wagner and Tammy L. Wagner for the full amount due, but at this time plaintiff is only entitled to enforce that judgment in rem against the secured real estate.*[18]

Other language in the proposed journal entry granted the judgment against the Wagners in the amount "of $168,315.82 comprised of unpaid principal, interest accrued through September 13, 2018, allowed attorney fees, and title and abstracting costs; for interest on that sum at the contract rate of 7.25% from September 13, 2018, until paid in full; and for its court costs . . ."[19] Additional language was inserted in the decretal paragraph of the journal entry that read as follows:

> *Such judgment is granted against defendants Ronnie L. Wagner and Tammy L. Wagner, but at this time plaintiff is only entitled to enforce that judgment in rem against the secured real estate.* In the event there is a deficiency judgment following sale of the secured real estate (presuming the judgment will not be paid in full), *no collection actions to enforce or recover that deficient balance may be taken against defendant Wagners (1) while the bankruptcy action in Case No. 18-110084 [sic] or any converted action is pending, (2) upon successful completion of an approved plan in that action, (3) or upon defendant Wagners being discharged in bankruptcy.*[20]

---

[17] Ex. C, Adv. Doc. 13-3.
[18] *Id.* at p. 6 of Journal Entry. (Emphasis added).
[19] *Id.* at p. 7 of Journal Entry.
[20] *Id.* (Emphasis added).

**6**

After the Wagners objected to the proposed journal entry, the state court held a hearing to settle it.[21] After considering the matter, the state court judge issued a written ruling on December 20, determining that the foreclosure journal entry complied with this Court's partial relief from stay order because the "judgment only becomes an *in personam* judgement [sic] if the bankruptcy proceeding fails."[22] The judgment was entered the next day.[23]

On January 9, 2019 the Wagners voluntarily converted their bankruptcy case to Chapter 7. The Hwy 166 Property was sold at sheriff's sale on January 31, 2019 for $116,672.46.[24] On February 18, 2019, the Wagners transferred their right of redemption to one Bill George who redeemed the property on February 20.[25]

The Wagners filed this adversary complaint on September 26, 2018, asserting that the Bank should be held in contempt for violating this Court's July 17 Order and violating the automatic stay by intentionally and willfully taking an *in personam* judgment against the Wagners in violation of § 362. The Wagners move for summary judgment on their complaint.

Summary Judgment Standards

A motion for summary judgment may be granted where the movant shows that no genuine dispute as to any material fact exists and the movant is entitled to

---

[21] *See* Adv. Doc. 18, p. 19; Ex. D, Adv. Doc. 13-4, Tr. of Hearing dated Nov. 20, 2018.
[22] Ex. E, Adv. Doc. 13-5.
[23] Ex. F, Adv. Doc. 13-6.
[24] Ex. G, Adv. Doc. 13-7.
[25] Ex. H, Adv. Doc. 13-8; Ex. I, Adv. Doc. 13-9. The Court notes that the Clerk's Receipt and Certificate of Redemption is unsigned and unfiled.

7

judgment as a matter of law on those uncontroverted facts.[26] Facts are material if they are essential to the proper disposition of the claim under the applicable law and a fact is genuinely disputed if there is sufficient evidence from which the trier of fact could resolve the issue for the non-movant.[27] In reviewing the factual record, the Court must draw all reasonable inferences in favor of the non-movant.[28]

Factually, very little is in dispute in this case. The Bank controverts the plaintiffs' Fact No. 4 because plaintiffs incorrectly identified the docket number and the date of entry of the referenced bankruptcy order on the motion to extend the automatic stay.[29] The recited content of the referenced order is not otherwise disputed. The Bank controverts plaintiffs' Fact No. 6 because it contains a legal conclusion that the Bank's proposed foreclosure Journal Entry took an *in personam* judgment, when the language in the proposed Journal Entry did not expressly denominate the judgment as either *in rem* or *in personam*.[30] That is the ultimate legal issue for the Court in this case—whether the Bank sought and obtained a personal judgment against the Wagners in the foreclosure action in violation of the automatic stay.[31] Accepting those limited qualifications of the facts the movants must demonstrate that the uncontroverted facts recited above entitle it to summary judgment as a matter of law.[32]

---

[26] Fed. R. Civ. P. 56(a) as incorporated in adversary proceedings by Fed. R. Bankr. P. 7056.
[27] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).
[28] *Adler v. Wal-Mart Stores, Inc.,* 144 F. 3d 664, 670 (10th Cir. 1998).
[29] *See* Adv. Doc. 18, p. 2.
[30] *Id.*
[31] *See Kline v. Deutsche Bank Nat'l Trust Co. (In re Kline),* 472 B.R. 98, 102 (10th Cir. BAP 2012) (whether party's actions violate the automatic stay is a question of law).
[32] Fed. R. Civ. P. 56(e)(3); *Reed v. Bennett,* 312 F.3d 1190, 1195 (10th Cir. 2002).

Analysis

The Wagners are entitled to judgment as a matter of law if, after considering the language of the state court Journal Entry,[33] I conclude that its provisions violate either the July 17 Order, the partial stay relief order, or the § 362 automatic stay. But before addressing the merits, we should first consider the Court's jurisdiction to enforce the automatic stay and determine whether the Journal Entry violated it.

***The Bank has Jurisdiction to Determine a Stay Violation and to Enforce its Orders***

The Bank contends that the state court's determination that the proposed Journal Entry in the foreclosure action complied with the bankruptcy court orders bars this Court from determining whether the Bank violated the automatic stay or the July 17 Order because the issue has been decided and is precluded by the state court orders. I disagree for two reasons. One, the Bank didn't plead the affirmative defenses of collateral estoppel or res judicata in this proceeding. To be effective, these affirmative defenses must be pled.[34]

Two, a judgment entered in violation of the stay is void *ab initio* and is of no legal effect.[35] As discussed below, the Bank breached the stay when it asked the state court to enter a money judgment against the Wagners. Orders entered in

---

[33] Journal Entry Granting Partial Judgment entered on December 21, 2018 ("Journal Entry"), Ex. F, Adv. Doc. 13-6.
[34] *See* Fed. R. Civ. P. 8(c)(1).
[35] *Ellis v. Consol. Diesel Elec. Corp.,* 894 F.2d 371, 372 (10th Cir. 1990) (action taken while the automatic stay is in place is void, without effect, and subject to collateral attack); *Franklin Savs. Ass'n v. Office of Thrift Supervision,* 31 F.3d 1020, 1022 (10th Cir. 1994) (citing *Kalb v. Feuerstein*).

**9**

violation of the stay are void, not binding on the bankruptcy court, and cannot be saved by collateral estoppel, res judicata, or the *Rooker-Feldman* doctrine.[36] As the United States Supreme Court held in *Kalb v. Feuerstein,* a state court foreclosure order entered in violation of the automatic stay "was not merely erroneous but was beyond its power, void, and subject to collateral attack."[37] Moreover, the Wagners' claims for stay violation under § 362(k)(1) and for contempt under § 105(a) are independent claims for relief that only this Court may adjudicate.[38]

Because this Court can render meaningful relief to the Wagners, this matter is not moot. The *in personam* judgment can, and should be, declared void and of no

---

[36] *In re Franco,* 574 B.R. 730, 737 (Bankr. D. N.M. 2017) (quiet title action brought in violation of stay is void and may not be given effect by claim preclusion, issue preclusion, nor *Rooker-Feldman* doctrine); *In re Gray,* 573 B.R. 868, 876-79 (Bankr. D. Kan. 2017) (state court in personam judgment entered in violation of discharge injunction was void and neither the full faith and credit statute, issue preclusion, nor the *Rooker-Feldman* doctrine deprived the bankruptcy court of jurisdiction over debtor's claim for violation of the discharge injunction).

[37] 308 U.S. 433, 440 (1940) (in bankruptcy case brought under the Frazier-Lemke Act, determining that state court judgment entered in violation of automatic stay is void ab initio and subject to collateral attack, even if the state court has determined (erroneously) that the stay doesn't apply to the state court proceeding). *See also In re Benalcazar*, 283 B.R. 514, 525-29 (Bankr. N.D. Ill. 2002) (state court decision entered in violation of stay was void; containing a good analysis and discussion of *Kalb* and its progeny); *Gruntz v. County of Los Angeles (In re Gruntz),* 202 F.3d 1074, 1083 (9th Cir. 2000) (*Rooker-Feldman* doctrine not implicated by collateral challenges to the automatic stay in bankruptcy, citing *Kalb*); *Chao v. Hospital Staffing Services, Inc.,* 270 F.3d 374, 383-84 (6th Cir. 2001) (bankruptcy court's determination whether stay applies to an action is "determinative" in the event of a dispute with a non-bankruptcy court's determination); *Raymark Industries, Inc. v. Lai,* 973 F.2d 1125, 1132 (3d Cir. 1992) (where state court erroneously determined it had jurisdiction under the automatic stay, the bankruptcy court has power to vacate actions taken in violation of stay).

[38] *See In re Raboin,* 135 B.R. 682, 684 (Bankr. D. Kan. 1991) (stating that bankruptcy court has exclusive jurisdiction to determine the extent and effect of the stay; state court contrary ruling did not bar debtor's motion); *In re Benalcazar,* 283 B.R. 514, 517 (Bankruptcy court has exclusive jurisdiction to grant relief from stay and to impose sanctions for violations of automatic stay; it is a core matter).

**10**

legal effect. And the Wagners can recover their actual damages, including attorney's fees and costs, incurred as a result of the Bank's stay violation.

### *The Automatic Stay Prohibited in personam Relief Against the Wagners[39]*

The automatic stay is a "vital, fundamental protection" afforded by the Bankruptcy Code and is designed to give debtors a reprieve from creditors; it is essential to the success of the debtors' Chapter 13 case, is effective immediately upon the filing of a bankruptcy petition, and extends to all non-bankruptcy courts and creditors.[40] When the Wagners filed their chapter 13 case, the Bank's continuation of its prepetition foreclosure action against them was stayed. Section 362(a)(1) provides:

> . . . a petition filed under section . . . 302 . . . of this title, . . . operates as a stay, applicable to all entities, of —(1) the . . . continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was . . . commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;[41]

Section 362(a)(6) stays "any act to collect, *assess,* or recover" a prepetition claim against the debtor.[42] Both provisions are in play here because they prohibit *in*

---

[39] The bankruptcy court's July 17 Order extending the automatic stay only allowed the Bank to pursue *in rem* relief against the Hwy 166 Property and foreclose its mortgage. The Bank may also be held in contempt of the July 17 Order—an order that it approved.
[40] *In re Braught,* 307 B.R. 399, 403 (Bankr. S.D.N.Y. 2004).
[41] 11 U.S.C. § 362(a)(1).
[42] 11 U.S.C. § 362(a)(6).

**11**

*personam* actions against a debtor in the absence of the bankruptcy court's lifting or modifying the stay to allow that.[43]

The imposition of this stay was signaled to all of the Wagners' creditors not only by the notice of bankruptcy issued by the Court, but also in their plan. In that plan, the Wagners indicated their intent to surrender the Hwy 166 Property. Our District's form Chapter 13 plan specifically prohibits *in personam* relief:

> Section 9: **Relief from Stay Regarding Property to Be Surrendered**
>
> Upon plan confirmation, any stays under § 362(a) and § 1301(a) shall be terminated as to any surrendered property. This provision does not prevent the earlier termination of the stay by operation of law or by Court order. *Nothing contained in this section operates to permit in personam relief against debtor or to abrogate debtor's rights and remedies under non-bankruptcy law.* The Trustee shall not make distributions to any secured claimant in this class, including any assignees and successors in interest of the claimant.[44]

In § 18.2 of the Wagners' plan, they agreed to consent to a lift of stay upon confirmation allowing the Bank to proceed with state-law foreclosure "of its lien" against the Hwy 166 Property.[45] Nowhere in the plan did they consent to stay relief for entry of a personal judgment against them.

Likewise, nothing in either the July 17 Order extending the stay or the Bank's partial stay relief order mentions *in personam* relief against the debtors. Indeed, the agreed-to stay relief memorialized by the July 17 Order is explicit. That relief is

---

[43] *In re Everchanged, Inc.,* 230 B.R. 891, 894 (Bankr. S.D. Ga. 1999) (noting distinction between foreclosure, in rem, and enforcing a deficiency judgment, in personam).
[44] Doc. 6.
[45] Doc. 6, p. 6, § 18.2.

**12**

limited to allowing the Bank to pursue *in rem* relief against the Hwy 166 Property by foreclosing its mortgage on the property.

Nevertheless, the Bank submitted a journal entry in state court that provided otherwise. Two provisions in the December 21, 2018 Journal Entry grant the Bank judgment against the Wagners. The first, paragraph 21 of the findings, provides:

> The Order for Relief from Automatic Stay (Partial) authorizes plaintiff and this court to complete these state court foreclosure proceedings as to the first cause of action [the Hwy 166 Property]. *The Court concludes judgment should be entered against defendants Ronnie L. Wagner and Tammy L. Wagner for the full amount due*, but at this time plaintiff is only entitled to enforce that judgment in rem against the secured real estate.[46]

The second, the decretal paragraph, states:

> IT IS FURTHER CONSIDERED, ORDERED, ADJUDGED AND DECREED plaintiff, The Union State Bank, *is hereby granted judgment against defendants Ronnie L. Wagner and Tammy L. Wagner for the sum of $168,315.82* comprised of unpaid principal, interest accrued through September 13, 2018, allowed attorney fees, and title and abstracting costs; for interest on that sum at the contract rate of 7.25% from September 13, 2018, until paid in full; and for its court costs in this action, both accrued and to accrue, which are currently assessed at $255.00. *Such judgment is granted against defendants Ronnie L. Wagner and Tammy L. Wagner*, but at this time plaintiff is only entitled to enforce that judgment *in rem* against the secured real estate. In the event there is a deficiency judgment following sale of the secured real estate (presuming the judgment will not be paid in full), no collection actions to enforce or recover that deficient balance may be taken against defendant Wagners (1) while the bankruptcy action in Case No. 18-110084 [sic] or any converted action is pending, (2) upon successful completion of an approved plan in that action, (3) or upon defendant Wagners being discharged in bankruptcy.[47]

\* \* \*

---

[46] Ex. F, Adv. Doc. 13-6. p. 7. Emphasis added.
[47] *Id.* at p. 8. Emphasis added.

**13**

> IT IS FURTHER ORDERED *in the event the judgment rendered herein is not satisfied in full within a period of ten (10) days from the date hereof,* upon request of plaintiff an Order for Sale shall be issued . . .[48]

### *The State Court Journal Entry Grants an in personam Judgment Against the Wagners*

The Journal Entry itself violates § 362(a)(1) in that it "continues … an action against the debtors…" and imposes a money judgment against the Wagners for the full principal balance due on the mortgage note, together with interest, fees and costs until paid in full.[49] The entry of judgment also constitutes an act to "assess" a prepetition claim against the Wagners in violation of § 362(a)(6).[50] The judgment "imposes personal liability" on the Wagners, as opposed to a "judgment against a thing, right, or status."[51] The judgment is not qualified as an *in rem* judgment. The

---

[48] *Id.* at p. 9. Emphasis added.

[49] *See In re Velez Arcay,* 499 B.R. 225, 234-35 (Bankr. D. P.R. 2013) (Bank willfully violated automatic stay, as modified under confirmed Chapter 13 plan, by seeking and obtaining both *in rem* and *in personam* remedies in state court foreclosure judgment); *In re Braught,* 307 B.R. 399, 404 (Bankr. S.D. N.Y. 2004) (state court's judicial act of signing judgment against Chapter 13 debtors while automatic stay was in effect was a "continuation of a judicial proceeding" against debtors and was void ab initio as violation of automatic stay); *In re Robinson,* 2011 WL 832857, at *5 (Bankr. E.D. Va. Mar. 3, 2011) (after obtaining stay relief in Chapter 7 case (in which debtor indicated her intent to surrender the property) to commence foreclosure suit, creditor's complaint that sought both *in rem* relief and *in personam* money judgment violated stay). Under Kansas law, a judgment does not become effective until a journal entry is signed by the trial judge and filed. The entry of the state court Journal Entry here was a judicial act, not merely a ministerial act. *See* KAN. STAT. ANN. § 60-258. *See also, Ellis v. Consolidated Diesel Elec. Corp.,* 894 F.2d 371, 373 (10th Cir. 1990) (grant of summary judgment without lifting of automatic stay was void and without effect.).

[50] To "assess" means "to determine the rate or amount of . . . ." *See* Merriam-Webster Dictionary viewed April 26, 2019 at https://www.merriam-webster.com/dictionary/assess. *See also Baer v. Board of County Comm'rs (In re Prairie Mining),* 194 B.R. 248, 257 (Bankr. D. Kan. 1996) (quoting Black's Law Dictionary meaning of "assess" as including "to fix the amount of the damages" or "to impose a pecuniary payment upon persons" in case involving priority of property tax claims).

[51] *See* BLACK'S LAW DICTIONARY (10th ed. 2014), judgment – personal judgment.

14

Bank could have easily sought judgment against the Wagners, *in rem*, to enforce its mortgage.[52] But it asked for more when it rejected the Wagners' counsel's first proposed modification of the Journal Entry limiting the judgment to one *in rem*, and instead included the "springing" language delaying *in personam* enforcement until certain conditions occurred. It forcefully advocated to the state court that the entry of the judgment was permitted by the bankruptcy court's orders suggesting a willfulness from which it has yet to relent. No showing of a bad motive or intent on the part of the Bank is required to find a willful violation. All that is required is that the Bank knew of the automatic stay and intended the actions that constituted the violation.[53] Early on, the Wagners' counsel put the Bank on notice of a potential stay violation if it pursued *in personam* relief against his clients; that the Bank or its counsel may have believed their actions were permissible and reasonable is irrelevant.[54] Nor did it seek to vacate the judgment, even after this adversary proceeding was commenced. The Bank's actions constitute a willful violation of the automatic stay that violates the terms of this Court's July 17 Order.

### *The Delayed or Conditional Enforcement of the Judgment Does Not Cure the Stay Violation*

The springing nature of the judgment doesn't save the Bank. Suggesting that the judgment would not be enforced against the Wagners while they were in bankruptcy or unless certain events didn't occur doesn't make the judgment any

---

[52] *Id.,* judgment – judgment in rem.
[53] *In re Johnson,* 501 F.3d 1163, 1172 (10th Cir. 2007) (no specific intent is required; creditor's good faith belief that its actions were permitted is irrelevant).
[54] *Id.* at 1173.

**15**

less personal. Judge Berger addressed a similar factual setting in *In re Maslak*.[55] Like this case, the Maslaks surrendered property under their Chapter 13 plan that was the subject of a prepetition state court foreclosure action by the mortgage creditor. The creditor moved for summary judgment in the foreclosure case, seeking *in personam* judgment against the Maslaks. In a footnote to their summary judgment motion, the creditor stated that the Maslaks were in an active Chapter 13 case in which their plan surrendered the property, allowing the creditor to proceed with foreclosure. The footnote then stated: "Should Borrowers complete their Ch. 13 Plan and receive a discharge, CitiMortgage will have and recover only an *in rem* judgment."[56] Judge Berger characterized the creditor's action as a "qualified demand for *in personam* judgment," that knowingly and willfully violated the stay and was not "rescued" by the footnote.[57]

> The request for *in personam* judgment is not rescued from violation of the automatic stay by the footnote. *In personam* judgment should not have been requested. In Kansas, a mortgagee may proceed *in rem* against the property to foreclose its lien and to eventually effect transfer of title from the mortgagors to the mortgagee. The act to seek *in personam* judgment, notwithstanding the ineffectual attempt in a footnote to rescue this request from a violation of the automatic stay, is a willful and knowing act by CitiMortgage against the Debtors in violation of the automatic stay. Any and all pleadings filed in the State Court Case after the filing of this bankruptcy petition, to wit January 28, 2011, are void and of no effect.[58]

---

[55] No. 11-20216-13, 2012 WL 5199168 (Bankr. D. Kan. Oct. 19, 2012).
[56] *Id.* at *2.
[57] *Id.*
[58] *Id.*

**16**

So, too, the Bank's inclusion of language in the Journal Entry conditioning when it may enforce its *in personam* judgment against the Wagners, does not remedy the stay violation.[59]

### *Relief for Willful Violation of the Stay, § 362(k)(1)*

Having found that the Bank willfully violated the stay, the Court turns to whether the Wagners have been injured by the Bank's violation and if so, the appropriate relief. Section 362(k)(1) *mandates* that the Court award "actual damages, including costs and attorneys' fees" to individuals injured by any willful violation of the automatic stay.[60] The Court may also award punitive damages for the stay violation, if appropriate. The Court notes that only the Bank (not its counsel) has been sued for the stay violation. Under agency principles, the Bank is liable for the actions of its attorneys who represented it both here and in state court.[61]

Apart from incurring legal fees and expenses to enforce their rights, the Wagners allege no other compensable harm. Attorney fees and costs alone are

---

[59] *See also In re Robinson,* 2011 WL 832857, at *5 (Bankr. E.D. Va. Mar. 3, 2011) (criticizing creditor's law firm for using same form of standard foreclosure complaint for debtor in bankruptcy; complaint alleging in rem enforcement of debt coupled with in personam money judgment "except where a discharge is applicable" to the extent there was a deficiency violated the automatic stay; concluding that boiler-plate caveat was insufficient "to defuse the otherwise express request for a money judgment.").

[60] 11 U.S.C. § 362(k)(1) (stating that such individuals *shall* recover actual damages).

[61] *See In re Sullivan,* 367 B.R. 54, 67 (Bankr. N.D. N.Y. 2007); *Kline v. Deutsche Bank Nat'l Trust Co. (In re Kline),* 420 B.R. 541, 548 (Bankr. D. N.M. 2009); *In re Henley,* 480 B.R. 708, 803 (Bankr. S.D. Tex. 2012). Under Kansas law, the relation of attorney and client is one of agency to which the general rules of agency law apply. *Bucher & Willis Consulting Engineers, Planners and Architects v. Smith,* 7 Kan. App. 2d 467, 469, 643 P.2d 1156 (1982).

**17**

recoverable as actual damages.[62] Incredibly, the Bank says that the Wagners' attorney fees could have been avoided had they not brought this adversary proceeding. The Court disagrees. How else could they enforce their rights under the automatic stay after their counsel's dogged efforts to resolve the disputed state court Journal Entry with the Bank failed? All of this could have been avoided if the Bank had granted the Wagners' initial, simple request to qualify the judgment as *in rem* in compliance with the limited stay relief granted by this Court.

No doubt the Bank was frustrated with these debtors' second bankruptcy filing stymying their foreclosure efforts, but the relief they sought with the improper *in personam* judgment was unnecessary. If the Wagners had stayed in chapter 13 and successfully completed their plan, any deficiency judgment of the Bank's would have been discharged. If their case had been dismissed, the stay would have terminated, and the Bank would have been free to recover the remainder of its claim. Now that the debtors are in chapter 7, whatever the Bank doesn't recover from the disposition of its collateral will constitute an unsecured claim in the estate. The Wagners' remaining debt will be discharged.

### **Conclusion and Further Orders**

The state court foreclosure Journal Entry grants the Bank an *in personam* judgment against the Wagners. By seeking that judgment, the Bank willfully

---

[62] *See In re Gagliardi,* 290 B.R. 808, 819-20 (Bankr. D. Colo. 2003) (legal expenses Chapter 7 debtors incurred as a result of creditor's violation of automatic stay and in enforcing their rights under the automatic stay, are actual damages); *In re Robinson,* 228 B.R. 75, 85 (Bankr. E.D. N.Y. 1998) (awarding attorneys' fees for stay violation even if debtor has suffered no other compensable harm).

**18**

violated the automatic stay imposed by § 362(a)(1) and (6) and this Court's July 17 Order. The *in personam* judgment is void.

This matter is continued to an evidentiary hearing on June 25, 2019 at 9:00 a.m. for a determination of the amount of plaintiffs' damages occasioned by the stay violation. Within 21 days of this Order's entry, the Wagners' counsel shall file itemized statements of attorney fees and expenses[63] with the Court and serve a copy on the Bank's counsel. Those statements shall be limited to the following:

1. Fees and costs incurred in the state court case for reviewing the drafts of the proposed Journal Entry of foreclosure and attempting to resolve and settle the Journal Entry, including state court appearances on the same.
2. In the bankruptcy case, any fees incurred in protecting the Wagners *in personam* rights under the automatic stay with respect to the Hwy 166 Property.
3. In this adversary proceeding, all fees and expenses incurred in prosecuting the alleged violation of the automatic stay and the July 17 Order.

The Bank shall have 14 days from service of these billing statements to file its objection to the fees and expenses sought and indicate the basis for the objection. If no objection is filed, the evidentiary hearing will be confined to the issue of whether

---

[63] To be clear, the itemized statements shall include a description of each task for which fees are sought, the date of the task, the amount of time spent on the task, and the fees billed for the task, including Mr. Peck's hourly rate, as well as any itemization of charges for services of a legal assistant in the adversary proceeding.

**19**

punitive damages should be imposed for the willful stay violation, and the Court will independently review the fees for reasonableness and necessity.

The Clerk of the Bankruptcy Court shall mail a courtesy copy of this Order to the Cowley County District Court to the attention of The Honorable Christopher E. Smith.

###